**62** SEITZ *v.* HARLEM RIVER & PORTCHESTER R. R. CO. NOS. 2 & 3.

First Department, July, 1925. [Vol. 214

MAX SEITZ, Respondent, Appellant, *v.* THE HARLEM RIVER AND PORTCHESTER RAILROAD COMPANY and Another, Appellants, Respondents. (Actions Nos. 2 and 3.)

First Department, July 6, 1925.

**Taxation — special and local assessments — foreclosure under Greater New York charter, chap. 17, tit. 5 (§§ 1027–1046, as amd. and added by Laws of 1908, chap. 490, as amd.) of tax lien under transfer of tax lien on railroad right of way in New York city — defense that assessments are illegal and void on ground that defendants' property was not benefited — as to assessments confirmed by court question is res judicata — assessments not confirmed by court cannot be attacked collaterally since assessors had jurisdiction and question of benefit was question of fact — defendants' remedy was under Greater New York charter, §§ 958–963 — right of way of railroad company cannot be sold and plaintiff's remedy to enforce judgment must be by action or by application to court of equity.**

In proceedings under title 5 of chapter 17 of the Greater New York charter (§§ 1027–1046, as amd. and added by Laws of 1908, chap. 490, as amd.) to foreclose a tax lien under a transfer of tax lien affecting the right of way of a railroad in New York city, it is not a good defense that the assessments were illegal and void on the ground that the property of the defendants was not benefited by the improvements, consisting of paving and the laying of a sewer, for as to those assessments which have been confirmed by the court the question is *res judicata.*

Assessments not confirmed by the court cannot be attacked collaterally by the defendants, since the assessors had jurisdiction to make the assessments in question and exercised that jurisdiction in a legal manner. It cannot be held as a matter of law that land of a railroad used as a right of way is not benefited by local improvements.

The defendants' remedy was under sections 958–963 of the Greater New York charter, and since the assessments themselves were not illegal and void, that remedy is exclusive and the question of the validity of the liens on the ground that no benefit resulted to the defendants from the improvements cannot be brought up collaterally in foreclosure proceedings.

The plaintiff, notwithstanding the judgment appealed from directs that the property affected by the lien be sold, cannot sell the property, since it is a portion of a right of way of a public service corporation, and his remedy to enforce the judgment is by an action or by application to a court of equity for appropriate relief by way of receivership or otherwise.

CROSS-APPEALS by the plaintiff, Max Seitz, and the defendants, The Harlem River and Portchester Railroad Company and another, from judgments of the Supreme Court, entered in the office of the clerk of the county of Bronx on the 5th day of May, 1922, upon the decision of the court rendered after a trial at the Bronx Special Term, in each of two actions brought to foreclose a tax lien under a transfer of tax lien affecting, respectively, lot 48, block 2755, section 10, and lot $1\frac{1}{2}$, block 2730, section 10, borough of The Bronx.

*George P. Nicholson,* Corporation Counsel [*William H. King* of counsel; *Isaac Phillips* with him on the brief], for the plaintiff.

*Charles M. Sheafe, Jr.* [*Edward R. Brumley* of counsel; *William L. Barnett* with him on the brief], for the defendants.

FINCH, J.:

The undisputed facts are that the defendants the Harlem River and Portchester Railroad Company and the New York, New Haven and Hartford Railroad Company, are respectively the owner and lessee of the property in question, which is now in the bed of the right of way of the Harlem River and Portchester Railroad Company and used for railroad purposes. Under the terms of the lease the New York, New Haven and Hartford Railroad Company is required to pay the taxes and assessments upon the said property. Assessments were duly laid on lot 48, block 2755, in connection with the opening of Bryant avenue, Farragut street sewer, paving Garrison avenue and regulating Bryant avenue, and on lot 1½, block 2730, in connection with the opening of Garrison avenue, Truxton street sewer, paving Leggett avenue and regulating Leggett avenue. The defendants appeared in the proceedings for acquiring land for opening Bryant avenue and Garrison avenue, and objected to the assessments on the ground that it was improper to assess their lands for more than a nominal amount. The commissioners of estimate and appraisal overruled their objection with respect to the Bryant avenue assessment on lot 48 amounting to the sum of $238.21, and on May 28, 1903, their action was confirmed by the Supreme Court against the objections of the defendants. The Garrison avenue assessment on lot 1½ amounting to the nominal sum of $1 was confirmed by the Supreme Court on December 21, 1910. With respect to the assessments for Farragut street sewer, paving Garrison avenue, regulating Bryant avenue, Truxton street sewer and paving and regulating Leggett avenue, these were not confirmed by a court of record. The defendants appeared before the board of assessors and objected that it was improper to assess the lots for more than a nominal sum, but instituted no proceedings under sections 958, 959 and 962 of the Greater New York charter for a review of the assessment.

On April 2, 1917, the liens affecting lot 48, block 2755, and lot 1½, block 2730, prior to March 15, 1916, were duly sold by the city of New York to the plaintiff's assignor, Henry Zirinsky, under the provisions of chapter 17, title 5, of the Greater New York charter (Laws of 1901, chap. 466, §§ 1027–1046, as amd. and added by Laws of 1908, chap. 490, as amd.), and transfers of the tax liens were thereupon issued to the purchaser. The defendants having

defaulted in the payment of the interest payable under the terms of the transfers of tax liens, the plaintiff declared the entire amount of said liens due and payable, and instituted these actions to foreclose the same.  After the defendants served their answers, the plaintiff notified the corporation counsel of the city of New York, pursuant to section 1046 of the Greater New York charter (as added by Laws of 1908, chap. 490), to take up the prosecution of said actions, whereupon the corporation counsel of the city of New York was substituted as attorney for the plaintiff.

The defendants claimed that the assessments were illegal and void on the ground that the property affected was not benefited by the local improvements.  The plaintiff, on the other hand, claimed that as the assessments for opening Bryant avenue and Garrison avenue were confirmed by the Supreme Court and as the board of assessors had determined that defendants' property had been benefited by the improvements for which the other assessments (not confirmed by a court of record) were laid, the assessments were not open to attack in these actions.

The Special Term, while of the opinion that the property in question should not have been assessed at all, decided that in so far as the assessments for opening Bryant and Garrison avenues, respectively, were concerned, the question was *res adjudicata* by reason of the confirmation by the Supreme Court, and was not open to collateral attack in these actions.  In so far as the remainder of the assessments which had not been confirmed by a court of record were concerned, the court held that the determination of the board of assessors was not final.  The court received proof offered by the defendants to show that the parcels in question were not benefited by the improvements, and in this connection made the following findings of fact:

" That said lot 48 of block 2755 in section 10 of The Bronx during the pendency of said street improvement proceedings was in actual use and substantially covered by railroad tracks, being a roadbed or right of way of the defendants over which continuously were operated the freight and passenger trains of the New Haven Company in the transportation of local, interstate and foreign traffic.

" That said lot 48 of block 2755 in section 10 of The Bronx did not and will not receive any benefit whatever from any of said street improvements."

Similar findings were made with reference to lot $1\frac{1}{2}$.

Judgments of foreclosure and sale in accordance with the decisions were duly entered in favor of the plaintiff in both actions, only for the amount of the unpaid assessments for opening Bryant

avenue and Garrison avenue. The plaintiff has appealed from so much of the judgment entered in action No. 2 as determined and adjudged that the assessments for the Farragut street sewer, paving Garrison avenue, regulating Bryant avenue, were invalid or unenforcible liens against lot 48, and from so much of the judgment entered in action No. 3 as determined and adjudged that the assessments for Truxton street sewer, paving Leggett avenue and regulating Leggett avenue, were not valid or enforcible liens on lot 1½. The defendants also have appealed from so much of the judgment entered in action No. 2 as determined and adjudged that the assessment for opening Bryant avenue is valid and enforcible against lot 48, and from so much of the judgment entered in action No. 3 as determined and adjudged that the assessment for opening Garrison avenue is valid and enforcible against lot 1½. As to the latter, however, the defendants now state the appeal was inadvertently taken, since the assessment was in the nominal amount of one dollar.

As to the assessments where there has been a confirmation by the court, we have a ground in support of their validity additional to that hereinafter set forth, namely, that the matter is *res adjudicata*. In so holding the learned court was clearly right. In *Mayer v. Mayor* (101 N. Y. 284, 288) it was said: " In street opening cases the confirmation is by the court; and after a hearing of all parties interested, or an opportunity to be heard, it becomes in effect a judgment of the court, which cannot be attacked in a collateral action except for reasons not alleged in this action. * * *. (*Dolan* v. *Mayor, etc.*, 62 N. Y. 472; *Astor* v. *Mayor, etc.*, Id. 580.)"

In *Dolan* v. *Mayor* (62 N. Y. 472) the court said: " It has already been decided by this court that an application cannot be made under chapter 338 of the Laws of 1858 to vacate an assessment for a street opening or widening under the act of 1813.* That decision was placed upon the ground that proceedings for such assessments are conducted before the court and its confirmation of the report of the commissioners is a judgment pronounced on a full hearing of the parties, and conclusive in its character as to all questions litigated or which might have been litigated in the proceeding. * * * The same principle precludes a review of the regularity of such proceedings in an action by the party assessed unless perhaps in case of such fraud or other circumstances as would authorize an action to set aside an ordinary judgment."

* See New York City Charter of 1813 (R. L. of 1813, chap. 86; 2 R. L. 409), § 178, as amd. by Laws of 1862, chap. 483.— [REP.

**66** Seitz *v.* Harlem River & Portchester R. R. Co. Nos. 2 & 3.

First Department, July, 1925. [Vol. 214

In so far as concerns the assessments which were not confirmed by the court, the learned court was in error in holding that the defendants could in these actions attack the determination that the property in question was benefited by the improvements. Whether or not the property was benefited presented a question of fact, which had been duly passed on by the board of assessors. As was said in *Matter of City of New York, Juniper Ave.* (233 N. Y. 387, 392): " Whether or not a particular parcel of land has been benefited by a particular improvement is ordinarily a question of fact. The test is not whether as now used by its present owner any advantage is received but whether its general value has been enhanced. It is immaterial whether land is owned ˙ by a railroad company or by a church or by an individual unless we can say as a matter of law that the improvement may not by any possibility increase the value of the property. If we cannot, the extent of the benefit is for the determination of the commissioners. They may consider all the circumstances."

Where, as here, it appears that the property alleged to have been benefited consists of land used solely as a permanent right of way of a railroad, it is still a question of fact whether such property is benefited by local improvements. Where all the evidence on this question points one way only, it may then be determined by the court as a matter of law; but under different circumstances the same property used exclusively as a permanent right of way of a railroad may be unmistakably benefited by such local improvements. For example, a railroad sometimes finds that the property above its right of way has become extremely valuable for dwellings and places of business, as witness the improvements above the right of way of the New York Central in New York city, where a plan of construction is adopted which permits of many-story apartment houses rising over the right of way. Improvements such as opening and widening streets, paving, regulating and the installation of sewers are of immense benefit to such property and demonstrate that whether the property of a railroad, when constituting also a right of way, may be benefited, is to be determined as is any other question of fact. As was said by Judge Crane in *N. Y. C. & H. R. R. R. Co.* v. *City of Yonkers* (238 N. Y. 165, 172): " ' But in one case, and one only we have said that the opening or widening of a street cannot as a matter of law be of benefit — where a railroad occupies a strip of land for its right of way. (*N. Y., N. H. & H. R. R.* v. *Vil. of Port Chester*, 149 App. Div. 893; affd., 210 N. Y. 600.) Such land is used permanently by the railroad corporation in its operation. * * * Not because the owner is a railroad corporation was the rule adopted; not because the land is devoted

to a public use, but because the public use to which it is devoted is in all probability permanent and is inconsistent with the idea of any benefit from such an improvement as we are here considering. Even so used other improvements might be of advantage to the right of way. It has been said that an assessment for a sewer might properly be imposed upon it. (*Troy & Lansingburgh R. R. Co.* v. *Kane,* 9 Hun, 506; affd., on other grounds, 72 N. Y. 614.)   *   *   *.'

" *   *   * Whether or not a particular piece of land was benefited by the improvement was a question of fact depending upon evidence. This evidence was to be produced and introduced before the assessors. Their determination was in the nature of a judicial proceeding, and their judgment final, except as hereinafter stated. The assessors may have made a mistake of judgment in determining the amount of benefit and necessarily the amount of assessment, or may have made a mistake in determining that the property was benefited at all. It was a matter of judgment to be determined by all the facts and circumstances. There is no statute which exempts the property of a railroad company from assessment for local improvement. Its yards, terminals or storage plants may be greatly enhanced in value by local improvements. It is only where the railroad's right-of-way is so used that it *gives evidence* of a permanent user for railroad purposes that we have held that the railroad cannot be assessed. These were facts for the assessors to determine." (Italics not in original.)

Moreover, the Legislature has provided the means by which relief may be obtained by an aggrieved property owner from an assessment imposed upon his property. Section 959 of the Greater New York charter provides: " If in the proceedings relative to any assessment or assessments for local improvements, or in the proceedings to collect the same, any fraud or substantial error shall be alleged to have been committed, the party aggrieved thereby may apply to a justice of the Supreme Court   *   *   * who shall thereupon, upon due notice to the corporation counsel, proceed forthwith to hear the proofs and allegations of the parties. If, upon such hearing, it shall appear that the alleged fraud or substantial error, other than such errors as are specified in the next section, has been committed as provided in this title, the said assessment shall be vacated or modified, and the lien created thereby, or by any subsequent proceedings, shall cease.   *   *   *."

Section 960 of the Greater New York charter provides that assessments are not to be set aside for certain irregularities and technicalities. Section 962 refers to the power of the court to reduce assessments for local improvements. Section 963 provides: "All proceedings to vacate or reduce assessments in The City of

New York must be brought within one year after the confirmation thereof." The defendants should have applied for relief in the manner provided by the aforesaid sections of the Greater New York charter. As was said by Judge Crane in *N. Y. C. & H. R. R. R. Co.* v. *City of Yonkers* (*supra*): " The railroad company should have appeared before the assessors and presented the facts, and then if dissatisfied, appealed according to law from an adverse determination."

The defendants urge that, notwithstanding the fact that they did not proceed to have the assessments reviewed as provided by sections 958–963 of the Greater New York charter, they could object to the assessments made upon this right of way whenever there was an attempt to enforce the same, citing in support of this contention language appearing in many cases to the effect that where an assessment is illegal and void, the property owner may not proceed affirmatively to have the same vacated by suit or action because of the provision of section 958 of said charter (as amd. by Laws of 1904, chap. 90; since amd. by Laws of 1919, chap. 320, and Laws of 1922, chap. 475), namely: " No suit or action in the nature of a bill of equity or otherwise shall be commenced for the vacation of any assessment in said city, or to remove a cloud upon title; but owners of property shall be confined to their remedies in such cases to the proceedings under this title," but may challenge the validity of the assessment whenever his property is seized under it or is made the foundation of proceedings against him. The case at bar, however does not come within the scope of the cases relied on, since it is not a case of an illegal or void assessment, as those terms are used in these decisions. The assessments were duly imposed by duly constituted bodies having jurisdiction of the subject-matter, and the only allegation of error is that the property was not in fact benefited. The assessments in this instance were no more illegal than if the property had been assessed out of proportion to the benefit actually received. In the latter instance, also, what was done would have been an error, but not an illegal act or one wholly void. In *N. Y. C. & H. R. R. R. Co.* v. *City of Yonkers* (*supra*), Judge Crane (at p. 173) said: " The assessors of the city of Yonkers were not without jurisdiction. Every requisite of the charter for levying these assessments had been complied with. * * * The action of the assessors may have been erroneous, their conclusion may have been unjustified, but their action did not lack jurisdiction."

In *People ex rel. Soeurbee* v. *Purdy* (179 App. Div. 748), where assessors had included in the value of the real estate " a building in course of construction, commenced since the preceding first day

of October and not ready for occupancy," and section 889-a of the Greater New York charter provided that such a building " shall not be assessed," a majority of this court, by SCOTT, J., said: " That the tax commissioners had jurisdiction to assess the real estate in question cannot be doubted.  Hence it cannot be said to be ' illegal.'  At the most the assessment was erroneous because in assessing the value of the real estate the tax commissioners included an element of value which should have been excluded, to wit, the unfinished building.  (Greater New York Charter, § 889-a, added thereto by Laws of 1913, chap. 324.)  This was error, not illegality, in the sense in which the word ' illegal ' is used in the Tax Law."  The decision of the majority of the court was affirmed in 222 New York, 657.

Since the judgment appealed from in each action has provided that the property be sold pursuant to the foreclosure of the tax lien, the question is raised by the defendants that the property of a railroad cannot be sold separately and apart from its franchise.  In this contention the defendants would seem to be correct. The public has such an interest in the ability of the common carrier to perform its public functions that a court of equity will not aid an individual to enforce compliance with his demands through a forced sale of a portion of the company's right of way.  The plaintiff's remedy is either to bring an action and enforce the judgment which he may obtain through execution, or to apply to a court of equity for the appropriate relief by way of a receivership or otherwise.  As was said in *N. Y. C. & H. R. R. R. Co.* v. *City of Yonkers* (*supra*): "As a practical matter, it [referring to the right of way] may not be severed from other property and sold.  It is a highway devoted to public travel. (*Allegheny City* v. *W. P. R. R. Co.*, 138 Penn. St. 375.) "

So, too, Elliott on Railroads (Vol. 2 [3d ed.], p. 372) says: "Assessment of right of way — Enforcing assessment.— While it is probably true that there may be a lien on the right of way of a railroad for a local assessment, where such assessment is authorized by statute, the manner of enforcing such assessment is not clearly settled.  The right of way of a railway company is a part of the company's property, without which it could not perform the duties it owes to the public.  To subject a portion of the right of way to a sale to enforce a local improvement would greatly embarrass, if not entirely destroy, the ability of the company to perform its public functions.  The rights of the public are regarded as superior to the rights of any individual, or group of individuals.  Local assessments are usually levied on a small portion of a railway right of way  *  *  *.  To permit such portion to be sold would prevent the operation of the

road, and, on grounds of public policy, it is held that the ordinary remedy of enforcing the collection of a local assessment by a sale of the property benefited does not apply to the enforcement of an assessment against the right of way of a railway company.   While there is a conflict of authority on this subject, the decided weight is that the right of way, if sold to pay the assessment, must be sold as a whole, and not in broken fragments.   *   *   *."

It follows that the judgment entered in action No. 2 should be modified by reversing that portion thereof which adjudged that the assessments for the Farragut street sewer, paving Garrison avenue and regulating Bryant avenue are not valid and enforcible liens against lot 48; and the judgment entered in action No. 3 should be modified by reversing that portion thereof which adjudged that the assessments for Truxton street sewer, paving Leggett avenue and regulating Leggett avenue are not valid and enforcible liens against lot No. 1½, and the matter remitted to the Special Term so that the plaintiff, if necessary, may prosecute his liens in such manner as he may be advised.

CLARKE, P. J., MERRELL, MARTIN and BURR, JJ., concur.

Judgments modified as indicated in opinion and the matter remitted to Special Term for such further action as plaintiff may be advised.   Settle orders on notice.